OPINION OF THE COURT
 

 Levine, J.
 

 Defendant and his codefendant were arrested for stealing a decoy pocketbook from an undercover officer in the cosmetics department of Macy’s Herald Square store in New York City. The pocketbook contained a “dummy” credit card, which had been provided by American Express to the New York City Police Department with a $100 limit under a fictitious name for the purpose of conducting undercover sting operations. The dispositive issue on this appeal is whether the card constitutes a “credit card” within the meaning of Penal Law § 155.00 (7) and General Business Law § 511, elevating its theft to grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree. We agree with the courts below that it does.
 

 In order to establish that a defendant has committed grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree where the property consists of a credit card, the People need not demonstrate that the defendant knew that the property was a credit card, but they must prove that the property, “in fact, consisted of a credit card”
 
 (People v Mitchell,
 
 77 NY2d 624, 629 [1991]). Penal Law § 155.00 (7) states that a “credit card” is any instrument or article so defined in General Business Law § 511, which, in turn, provides:
 

 “In this article, unless the context or subject matter otherwise requires:
 

 “1. ‘Credit card’ means and includes any credit card, credit plate, charge plate, courtesy card or other identification card or device issued by a person to another person which may be used * * * to purchase or lease property or services on the credit of the issuer or of the holder.”
 

 Subdivision (2) of that section defines “person” as including “any * * * legal or commercial entity” and subdivision (3) provides that an “issuer” is “a person who issues a credit card or a debit card.” A “holder” is defined as “a person to whom such a credit card * * * is issued or who has agreed with the
 
 *41
 
 issuer to pay obligations arising from the use of a credit card * * * issued to another person” (General Business Law § 511 [4]).
 

 At defendant’s trial, a representative of American Express testified that, although the company printed a fictitious name on the card, someone purporting to be that person could have charged up to $100 on the card to purchase merchandise or services and American Express would have been liable to the vendor in that amount. The representative added that American Express would “lose on the card if it [was] stolen” and charges were placed on it.
 

 The evidence in this case satisfies the literal language of the statute. The card here was issued by a person (American Express) to another person (the New York Police Department) and was capable of “be[ing] used * * * to purchase * * * property or services on the credit of the issuer” (General Business Law § 511 [1]).
 

 Defendant does not dispute that American Express and the Police Department fall within the definition of “person” in section 511 (2) or that American Express established a $100 credit line for the card that could be used to make purchases. Defendant argues, however, the term “issue,” which is not defined by the statute, must be given its technical meaning of “to send out or distribute officially,” for example, to “issue stock” (Black’s Law Dictionary 836 [7th ed 1999]), instead of its ordinary dictionary meaning “to put forth or distribute” (Merriam-Webster’s Collegiate Dictionary 622 [10th ed 1995]) adopted by the Appellate Division. Defendant maintains that “officially” implies the creation of an actual credit relationship between the issuer and holder which did not exist here.
 

 Nothing in the statute, however, indicates that the Legislature relied upon a particular “technical or special meaning” of the term “issue” in enacting section 511 (McKinney’s Cons Laws of NY, Book 1, Statutes § 233), rather than its everyday meaning
 
 (id.
 
 § 232). Moreover, even assuming that the definition proffered by defendant should apply, the use of the adverb “officially” to modify the act of putting forth or distributing does not imply creation of a credit relationship between the issuer and the holder. Here, American Express generated an account number and internal records and established a credit line that could be used to obtain goods or services in connection with the card — the card was “officially” created and distributed by the company. Using either definition, then, the
 
 *42
 
 card was “issued” by American Express to the Police Department.
 
 *
 

 Our interpretation is supported by the legislative history of the statute. As originally enacted, General Business Law § 511 (1) stated, in pertinent part:
 

 “ ‘Credit card’ means and includes any credit card, credit plate, charge plate, courtesy card, or other identification card or device issued by a person to another person
 
 which authorizes the holder
 
 to obtain credit or to purchase or lease property or services on the credit of the issuer or of the obligor” (L 1961, ch 549 [emphasis added]).
 

 “Holder” was defined as “a person to whom such a credit card is issued * * * including] an obligor”
 
 (id.).
 
 In 1970, the Legislature expanded the reach of the statute by changing the phrase “authorizes the holder” to “may be used,” thereby including instances where the holder of the card was not authorized to use it, so long as its use as a credit card was possible. To adopt defendant’s proffered interpretation would be to return to the prior version of the statute, rendering the amendment a nullity.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed.
 

 *
 

 By way of analogy, an issuer/payor’s naming of a fictitious payee in a negotiable instrument does not render the instrument invalid
 
 (see
 
 UCC § 3-405 [1] [b];
 
 Getty Petroleum, Corp. v American Express Travel Related Servs. Co.,
 
 90 NY2d 322, 327 [1997]).